**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**RONALD M. PARILLA, ALDA RUGG,**
**BILLY CATES, THERESA DECLUE,**
**AILEEN NUNEZ, DAVID W. ROBERTS,**
**KIM LEMISTER, FRANTARSHIA**
**STAFFORD, on behalf of themselves and**
**others similarly situated,**

         **Plaintiffs,**

**-vs-**                                        **Case No. 6:05-cv-850-Orl-31KRS**

**DONALD ESLINGER, MICHAEL**
**TIDWELL, DAVID DIGGS & SEMINOLE**
**COUNTY,**

         **Defendants.**
_____

# ORDER

This matter came before the Court after a hearing on the motions to dismiss filed by Defendants Donald Eslinger ("Eslinger"), Michael Tidwell ("Tidwell"), and David Diggs ("Diggs") (collectively, the "Individual Defendants") (Doc. 21) and by Defendant Seminole County (the "County") (Doc. 23), as well as the Plaintiffs' response (Doc. 29) to both motions.

**I.    Background**

    A.    The Parties

Defendant Eslinger is the Sheriff of Seminole County and is alleged to be responsible for the management and operations of the Seminole County Jail (the "Jail"). He has been sued in both his official and individual capacities. Defendants Tidwell and Diggs were responsible for the day-to-day operations of the Jail during the period covered by the First Amended Class Action

Complaint (henceforth, the "Complaint") (Doc. 20).[1] Tidwell is sued in both his official and individual capacities, while Diggs is sued only individually.

The Plaintiffs are all Seminole Country residents who had been charged with non-violent crimes such as improper vehicle registration or failure to display a license plate. With one exception, the Plaintiffs missed court appointments in December 2004 and were subsequently arrested for failure to appear.[2] Upon being transported to the Seminole County Jail, the Plaintiffs were subjected to strip searches and body cavity searches. In addition, the Plaintiffs (other than Lemister) contend that after a judge ordered their immediate release or their bond was paid, jail employees continued to detain them for an unreasonably long time.[3]

The Plaintiffs have asserted three causes of action under 42 U.S.C. § 1983. In Count One, the Plaintiffs allege that the searches violated their Fourth Amendment rights to be free from unreasonable searches and seizures and their Fourteenth Amendment rights to due process and privacy. In Count Two, the Plaintiffs allege that the searches were conducted in violation of Florida law requiring a supervisor's prior authorization, thereby infringing upon a liberty interest protected by the Fourteenth Amendment. And in Count Three, the Plaintiffs (except Lemister) contend that the unreasonably long detentions violated their Fourth Amendment right to be free from unreasonable seizure and a liberty interest protected the Fourteenth Amendment. As to each

---

[1] According to the Complaint, Diggs' oversight concluded in December of 2004, and Tidwell's began in January of 2005. (Doc. 20 at 4).

[2] Plaintiff Kim Lemister ("Lemister") was arrested on a charge of driving under the influence in September 2002 and transported directly to the Seminole County jail. (Doc. 20 at 13).

[3] Lemister does not allege that she was detained for an unreasonably long time after a judge had ordered her release. (Doc. 20 at 24).

count, the Plaintiffs seek, *inter alia*, declaratory and injunctive relief, damages and attorneys' fees. The Plaintiffs also seek punitive damages against the Individual Defendants.

The Individual Defendants have moved to dismiss the individual capacity claims in all three counts due to qualified immunity, and Eslinger seeks dismissal of the individual capacity claims against him on the grounds that the Complaint does not sufficiently establish supervisory liability. The Individual Defendants also contend that counts two and three fail to state a claim upon which relief may be granted. Seminole County seeks dismissal of the claims against it on the grounds that it cannot be held liable for the actions of Eslinger.[4]

## II. Standard of Review

In ruling on a motion to dismiss, this Court must view the Complaint in the light most favorable to the Plaintiffs, *Scheuer v. Rhodes*, 416 U.S. 232 (1974), and must limit its consideration to the pleadings and any exhibits attached thereto. FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the Complaint's allegations in the Plaintiffs' favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). The Court will not dismiss a complaint for failure to state a claim unless it appears beyond a doubt that the Plaintiffs cannot prove any set of facts that support a claim for relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). In ruling on a motion to dismiss, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

---

[4]Seminole County also seeks dismissal of any punitive damages claims made against it, but the Plaintiffs' punitive damages claims are limited to the Individual Defendants. (Doc. 20 at 26).

In reviewing a complaint on a motion to dismiss under Rule 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (*quoting* Fed.R.Civ.P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). Instead, the complaint need only "contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Id.* (internal citation and quotation omitted). "A complaint need not specify in detail the precise theory giving rise to recovery. All that is required is that the defendant be on notice as to the claim being asserted against him and the grounds on which it rests." *Sams v. United Food and Comm'l Workers Int'l Union*, 866 F.2d 1380, 1384 (11th Cir. 1989).

**III.    Legal Analysis**

    A.    <u>Qualified Immunity</u>

Qualified immunity shields a Section 1983 defendant from liability for harms arising from discretionary acts, as long as the discretionary acts do not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known. *Wilson v. Jones*, 251 F.3d 1340, 1344 (11th Cir. 2001). The defense of qualified immunity is appropriate to consider at the motion to dismiss stage. *Snider v. Jefferson State Cmty. Coll.*, 344 F.3d 1325, 1327 (11th Cir. 2003). To receive qualified immunity, "the government official must first prove that he was acting within [the scope of] his discretionary authority." *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003). Once the official establishes that he was acting within the scope of his

discretionary authority, the burden shifts to the plaintiffs to show that qualified immunity is not appropriate. *Id*. To determine whether qualified immunity is appropriate, the Court must ask two questions. First, whether, viewed in the "light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id*. (internal citation and quotation omitted). Second, if a violation of a right can be made out based on the facts alleged, the Court must determine whether that right was clearly established. *Id*. In making these determinations, the Court accepts "all well-pleaded facts in the complaint as true and draw[s] all inferences in the plaintiff's favor." *Williams v. Ala. State Univ.*, 102 F.3d 1179, 1182 (11th Cir. 1997); *see also O'Rourke v. Hayes*, 378 F.3d 1201, 1206 (11th Cir. 2004) (the Court "look[s] to the pleadings to see if the plaintiff has successfully alleged the violation of a clearly established right.").

The determination of whether a constitutional right was clearly established at the time of the incident must be made in the specific context of the case. *Vinyard v. Wilson*, 311 F.3d 1340, 1349 (11th Cir. 2002). "A right is clearly established if, in light of preexisting law, the unlawfulness of the official's conduct is 'apparent'." *Cooper v. Dillon*, 403 F.3d 1208, 1220 (11th Cir. 2005); *Vinyard*, 311 F.3d at 1350 (issue is whether "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."). This standard does not require that the particular conduct under scrutiny was previously found to be unlawful. *Cooper*, 403 F.3d at 1220. Instead, the state of the existing law must only be such that the official had a fair warning that his conduct is unlawful. *Id. See also Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ("If the law at that time was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to 'know' that the law

forbade conduct not previously identified as unlawful."). General statements of the law are not inherently incapable of giving fair and clear warning, and in some instances a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful. *Hope v. Pelzer*, 536 U.S. 730,. 741 (2002) (internal quotation omitted).

The Eleventh Circuit has identified three categories of "fair and clear" warning:

> First, we look to see whether the federal statute or constitutional provision is so clear, and the conduct is so bad, that it precludes qualified immunity even in the total absence of case law. Second, if the conduct is not bad enough that it violates a constitutional provision on its face, we look to case law that can be applied broadly to a number of factual situations. Third, and finally, if no broad case law is applicable, we turn to case law precedent that is tied to the facts.

*Kesinger v. Herrington*, 381 F.3d 1243, 1250 n.6 (11th Cir. 2004) (internal citations omitted).

1. <u>Count One</u>

There is no dispute as to whether the Individual Defendants were operating in their discretionary capacities during the events at issue in the Complaint. And in regard to this count, the Individual Defendants do not dispute that the Plaintiffs have properly alleged the violation of a constitutional right.[5] However, they contend that the law regarding strip searches[6] is not "clearly established" within this circuit, entitling them to immunity.

---

[5] The Individual Defendants concede that the claim in Count One should proceed against Eslinger in his official capacity. (Doc. 21 at 2).

[6] In the Complaint, the Plaintiffs complain of both strip searches and body cavity searches. It is possible that one type of search but not the other violates the Constitution on these facts. *See*, *e.g.*, *U.S. ex rel Wolfish v. Levi*, 439 F.Supp. 114 (D.C.N.Y. 1977) (upholding prison's strip search policy but prohibiting body cavity searches), *reversed on other grounds*, *Bell v. Wolfish*, 441 U.S. 520 (1979). Because the distinction does not affect the disposition of the instant motions, for simplicity's sake the remainder of this opinion will refer only to "strip searches".

The Fourth Amendment to the United States Constitution provides, in pertinent part, that "[t]he right of the people to be secured in their persons ... against unreasonable searches and seizures, shall not be violated." Pretrial detainees such as the Plaintiffs do not forfeit all constitutional protections by reason of their confinement. *Justice v. City of Peachtree City*, 961 F.2d 188, 192 (11th Cir. 1992). The test of reasonableness under the Fourth Amendment requires "a balancing of the need for the particular search against the invasion of personal rights that the search entails." *Bell v. Wolfish*, 441 U.S. 520, 559 (1979). "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." *Id.* It is axiomatic that a strip search represents a serious intrusion upon personal rights.

> The experience of disrobing and exposing one's self for visual inspection by a stranger clothed with the uniform and authority of the state, in an enclosed room inside a jail, can only be seen as thoroughly degrading and frightening. Moreover, the imposition of such a search upon an individual detained for a lesser offense is quite likely to take that person by surprise, thereby exacerbating the terrifying quality of the event.

*Justice* at 192 (quoting *John Does 1-100 v. Boyd*, 613 F.Supp. 1514, 1522 (D.Minn. 1985)). Given the uniquely dangerous nature of a detention facility, however, strip searches of inmates may sometimes be conducted with less than probable cause to believe that they possess money, drugs, weapons, or other contraband. *Bell* at 560.

The United States Court of Appeals for the Eleventh Circuit has repeatedly concluded that law enforcement officers may strip-search a pretrial detainee without running afoul of the Fourth Amendment only if they possess a "reasonable suspicion" that the detainee is concealing weapons

or contraband.[7]  *Skurstenis v. Jones*, 236 F.3d 678, 682 (11th Cir. 2000) (joining "every other circuit which has had occasion to review a similar policy" in holding county jail's policy unconstitutional for failing to require reasonable suspicion as prerequisite to strip search); *Wilson*, 251 F.3d at 1343 ("Because Wilson was strip searched absent reasonable suspicion, we hold that the search of Wilson, as well as the jail's policy authorizing her search, violated the Fourth Amendment prohibition against unreasonable searches and seizures."); *Cuesta v. School Bd. of Miami-Dade County, Fla.*, 285 F.3d 962, 969 n.6 (11th Cir. 2002) ("The County argues that the search should be analyzed under the Due Process Clause of the Fourteenth Amendment.  Under the law of this circuit, however, a strip search performed without reasonable suspicion violates the Fourth Amendment rights of the individual searched."); *Justice* at 193 ("We hold that law enforcement officers may conduct a strip search of a juvenile in custody, even for a minor offense, based upon reasonable suspicion to believe that the juvenile is concealing weapons or contraband.").

Recently, however, the Eleventh Circuit has appeared to retreat from these pronouncements.  Sitting *en banc*, the court in *Evans v. Stephens*, 407 F.3d 1272 (11th Cir. 2005) (henceforth *Evans II*) stated in *dicta* that "[m]ost of us are uncertain that jailers are required to have a reasonable suspicion of weapons or contraband before strip searching – for security and safety purposes – arrestees bound for the general jail population." *Evans II* at 1278.  An earlier decision, *Evans v. City of Zebulon,* 351 F.3d 485, 490 (11th Cir. 2003) (henceforth *Evans I*), *vacated by Evans v. City of Zebulon*, 364 F.3d 1298 (11th Cir. 2004), had announced that

---

[7]Defendants make no claim that they had such reasonable suspicion.

"[a]rrestees who are to be detained in the general jail population can constitutionally be subjected to a strip search only if the search is supported by reasonable suspicion that such a search will reveal weapons or contraband." The *Evans II* court stated that this passage "doubtlessly contributed to causing some judges to vote for *en banc* rehearing" of *Evans I*. *Evans II* at 1278.[8] Subsequently, in *Hicks v. Moore*, 422 F.3d 1246, 1251 n.5 (11th Cir. 2005), the court – citing to the discussion in *Evans II* – again questioned, in *dicta*, whether a county jail's "indiscriminate strip-search practice" violated the Fourth Amendment. Because the plaintiff in *Hicks* had been arrested for a crime of violence – family violence battery – the court concluded that reasonable suspicion supported the search, mooting the question of whether jailers lacking such suspicion could constitutionally strip search their charges. *Id.* at 1252.

The Individual Defendants contend that *Evans II* and, to a lesser extent, *Hicks* have muddied the waters in this Circuit with regard to the constitutionality of strip searches, and that they therefore cannot be said to have violated clearly established law. At least one district court in this circuit has accepted a similar argument, stating that "if the majority of the Eleventh Circuit continues to perceive room to debate the contours of this constitutional right, it seems to this Court that no state official could justifiably be charged with having 'fair warning' that conducting a strip search absent a reasonable suspicion of contraband violates the law." *Powell v. Barrett*, 376 F.Supp.2d 1340, 1349 (N.D.Ga. 2005). "Put another way, this Court cannot characterize a state

---

[8] Because the strip search in *Evans II* was performed in hopes of finding evidence, rather than for purposes of safety or security, the *Evans II* court did not have the opportunity to reassess the standard applicable to a custodial strip search such as the ones at issue in this case. *Evans II* at 1279.

official's doubt in the existence of a constitutional rule 'unreasonable' if his uncertainty is shared by a majority of the Eleventh Circuit Court of Appeals."[9]

Respectfully, this Court reaches the opposite conclusion. The dicta in *Evans II* and *Hicks* may lead a reasonable observer to doubt whether the law in this Circuit regarding strip searches should remain so, but there is no doubt that that law is clearly established. Indeed, the Eleventh Circuit stated as much in *Hicks*: "We personally question that such a practice violates the Fourth Amendment. . . . But we accept that 'reasonable suspicion' is required by the law of the Circuit." *Hicks* at 1251 n.5. The Eleventh Circuit's repeated pronouncements provided more than fair warning to the Individual Defendants that strip searches were unlawful in the absence of reasonable suspicion.

The Individual Defendants also cite to several state court cases apparently concluding that Florida Statute § 901.211 – which makes probable cause (rather than reasonable suspicion) a prerequisite for some[10] strip searches by law enforcement officers – has altered the (federal) constitutional requirements for such searches. B ut even if one assumes that principles of federal

---

[9]The *Powell* court also distinguished its result from the result in *Wilson* – which held that reasonable suspicion was required – on the grounds that the searches at issue in its case were less intrusive than those at issue in *Wilson*. *Powell* at 1349-50.

[10]The statute provides in pertinent part that no person arrested for "a traffic, regulatory, or misdemeanor offense, except in a case which is violent in nature, which involves a weapon, or which involves a controlled substance" shall be strip searched unless there is probable cause to believe the person is concealing a weapon, a controlled substance, or stolen property, or unless a judge at first appearance has found that the person cannot be released on bond or recognizance. Fla. Stat. § 901.211(2). It does not appear that this probable cause requirement would apply to the Plaintiffs in this case. *See Welch v. Rice*, 636 So.2d 172 (Fla. 2d DCA 1994) (holding that person arrested for failure to appear had not been arrested for a traffic, regulatory, or misdemeanor offense and therefore Fla. Stat. § 901.211(2) did not apply).

law that have been clearly established by the Court of Appeals for the Eleventh Circuit can be "unsettled" by state appeals court decisions, these decisions do not assist the Individual Defendants, as they do not challenge the Eleventh Circuit's reasonable suspicion standard. Although a law enforcement officer might review the state cases and be uncertain as to whether something *more* than reasonable suspicion was sometimes required for strip searches in this state, he or she could have no doubt that the Fourth Amendment still mandates at least that much. Because the law on this point is clearly established, the Individual Defendants are not entitled to qualified immunity in regard to Count One.

### 2. Count Two

Florida Statute § 901.211 requires law enforcement officers, in all cases, to get written permission from a supervising officer before performing a strip search. Fla. Stat. § 901.211(5). In their second Count, Plaintiffs allege that the Defendants failed to get (or require) such authorization before performing the searches at issue here, resulting in a separate constitutional violation from that alleged in Count One. Specifically, the Plaintiffs contend that Florida Statute § 901.211(5) creates a liberty interest, and the Defendants' failure to follow the statute deprived them of that interest without due process, a Fourteenth Amendment violation.

Both sides acknowledge that a state can, under proper circumstances, create a liberty interest subject to protection by the Fourteenth Amendment. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). They spend a significant amount of energy discussing the standards governing the creation of such an interest and whether Florida Statute § 901.211 satisfies those standards. But the Court finds that this discussion misses the point.

-11-

In *Graham v. Connor*, 490 U.S. 386 (1989), the Supreme Court announced that all claims that law enforcement officers had used excessive force during an arrest, investigatory stop, or other seizure were to be analyzed under the Fourth Amendment's reasonableness standard rather than under a substantive due process approach. "Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims." *Id.* at 395.

The Fourth Amendment also provides an explicit textual source of constitutional protection against the sort of intrusive searches alleged in this complaint. In *Skurstenis*, the Eleventh Circuit Court of Appeals affirmed the district court's decision to analyze the plaintiff's claims solely under the Fourth Amendment, stating that "where an enumerated constitutional right specifically applies to a claimed violation, the claim should be analyzed only as a possible violation of that enumerated right, not under the generalized notion of substantive due process." *Skurstenis*, 236 F.3d at 681 n.3 (citing *Graham*). *And see Cuesta,*, 285 F.3d at 969 n.6 (rejecting argument that search should be analyzed under Due Process Clause of Fourteenth Amendment because "[u]nder the law of this circuit . . . a strip search performed without reasonable suspicion violates the Fourth Amendment rights of the individual searched.").

On the facts alleged in the Amended Complaint, the Plaintiffs' strip search claims are Fourth Amendment claims, not due process claims. Therefore, Count Two must be dismissed. Moreover, although this point was not raised by the Defendants, the same rationale requires dismissal of the Plaintiffs' Fourteenth Amendment claims in Count One.

       3.     Count Three[11]

     The Plaintiffs allege that all but two of their number were detained for approximately five hours after a court order for their immediate release was received at the Jail. (One of the Plaintiffs alleges he was detained for about 14 hours after his family paid his bond; the remaining Plaintiff does not raise a delay claim.) The Individual Defendants contend that the delays in releasing the Plaintiffs do not rise to the level of a constitutional violation. Alternatively, they argue that even if such a delay is constitutional, the law is not clearly established as to the precise number of hours that would constitute an unreasonable delay, entitling them to qualified immunity.

     The constitutional right to be free from continued detention after it is known that the detainee is entitled to release is clearly established, both in this Circuit and others. *Cannon v. Macon County*, 1 F.3d 1558, 1562-63 (11th Cir. 1993) (citing cases). Obviously, such a release need not be instantaneous to satisfy the Fourteenth Amendment. As the Individual Defendants point out, the former Fifth Circuit has held that in a false imprisonment situation a sheriff's duty to his prisoner "is not breached until the expiration of a reasonable time for the proper ascertainment of the authority upon which his prisoner is detained." *Whirl v. Kern*, 407 F.2d 781, 792 (5th Cir. 1969). However, *Whirl* involved a sheriff who claimed he failed to release a detainee for nine

---

[11]As in Count One, the Plaintiffs allege in Count Three that their continued detentions violated their rights under both the Fourth and Fourteenth amendments. (Doc. 20 at 23). However, binding precedent suggests that false imprisonment claims such as those asserted in Count Three are Fourteenth Amendment claims only. *See Douthit v. Jones*, 619 F.2d 527, 532 (5th Cir. 1980) (stating that Section 1983 plaintiff must show "that the defendant sheriff and deputy sheriff imprisoned him in violation of his Fourteenth Amendment due process rights"). In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981. Again, although not raised by the Defendants, this rationale requires the dismissal of the Fourth Amendment claims in Count Three.

months because he was not apprised of the dismissal of the indictments against the detainee. *Id.* at 785. The alleged delays in this case are shorter, but the allegations are more troubling. The Defendants are alleged to have simply refused to release the Plaintiffs – despite a court order to do so – pursuant to an official policy, practice, or custom. (Doc. 20 at 24-25).

To this Court, such an unjustified delay is so obviously a violation of every citizen's due process rights that it precludes qualified immunity even in the absence of case law directly on point. *Kesinger*, 381 F.3d at 1250 n.6. But even if one were to conclude that such unjustified delays do not violate the Fourteenth Amendment on its face, case law covering analogous situations provides fair warning that such delays are constitutionally impermissible. *See, e.g, County of Riverside v. McLaughlin*, 500 U.S. 44, 56 (1991) (in Fourth Amendment case requiring reasonably prompt probable cause hearings after warrantless arrests, stating that examples of unreasonable delays include "delays for the purpose of gathering additional evidence to justify the arrest, a delay motivated by ill will against the arrested individual, or *delay for delay's sake*.") (emphasis added). The Individual Defendants are not entitled to qualified immunity in regard to Count Three.

### 4.    Supervisory Liability

Eslinger raises a separate argument that he is entitled to dismissal of the claims against him. Briefly stated, he contends that the Plaintiffs have not alleged that he was personally involved in any of the conduct at issue, that this means they are suing him for some type of supervisory liability, and that the Complaint does not sufficiently allege any of the bases – such as participation, causation, or notice – required for such liability.

It is true that supervisory officials are not liable under Section 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability. *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003). Instead, supervisory liability under Section 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional deprivation. *Id.* However, in the instant case, Eslinger is alleged to have been responsible for "making, implementing, allowing, authorizing, or acquiescing in the policies, practices, and customs" at issue in this case. (Doc. 20 at 3-4). He is also alleged to have authorized or permitted the strip search policy, or acquiesced in Defendants Tidwell and Diggs creating and implementing the policy that resulted in those searches. (Doc. 20 at 22). And the Plaintiffs make identical allegations in regard to the alleged policy of unreasonably lengthy detentions. (Doc. 20 at 25).

These allegations demonstrate that the Plaintiffs seek to impose liability on Sheriff Eslinger, not on the basis of *respondeat superior*, but on the basis of his own acts, such as making or authorizing the policy that resulted in the strip searches. *See Cottone* at 1362 (noting that plaintiffs failed to allege, *inter alia*, "any affirmative custom or policy implemented by the supervisory defendants that played a role" in the constitutional violations at issue, and concluding that complaint therefore did not allege the causal connection required to impose supervisory liability).

        5.       <u>Seminole County</u>

As was the case with Eslinger, Seminole County argues that it cannot be held liable on the basis of *respondeat superior*. And the County is correct that municipalities cannot be held liable

under Section 1983 solely based on a *respondeat superior* theory of liability. *Monell v. New York City Dept of Social Services*, 436 U.S. 658 (1978). "Municipalities may be held liable under Section 1983 only for acts for which the municipality itself is actually responsible, that is, acts which the municipality has officially sanctioned or ordered." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988) (internal quotation omitted).

However, where a governmental entity delegates the final authority to make decisions, then those decisions necessarily represent official policy. *Ancata v. Prison Health Services, Inc.*, 769 F.2d 700, 705 n.9 (11th Cir. 1985). Such a delegation, rather than *respondeat superior*, is the basis for the Plaintiff's claims against the County. The Plaintiffs allege that the County "has delegated the management and operations of the Jail where the wrongs complained of herein occurred to the Defendant Sheriff of Seminole County." (Doc. 20 at 3).

Apparently in response to this alleged delegation, the County complains that the Sheriff is an independent constitutional officer, that he, his deputies, and the corrections officials at the Jail are not employees of the County, and that the County cannot be held responsible for their actions. However, the statutes cited by the County – which mostly deal with the Sheriff's authority to run his office and oversee his deputies – do nothing to establish that the Seminole County Sheriff is "independent" of Seminole County, at least insofar as it comes to operation of the Seminole County Jail.

The County also cites to a Supreme Court decision that found that an Alabama county was not liable under Section 1983 for the actions of the county sheriff. *McMillian v. Monroe County, Ala.*, 520 U.S. 781 (1997), involved a former death row inmate whose conviction had been reversed. The former inmate sued the sheriff for allegedly suppressing exculpatory evidence. *Id.*

at 1734.  The Court found that the sheriff represented the state, not the county, when executing law enforcement duties, and that the County could therefore not be held liable for his actions under Section 1983.  *Id.* at 1736.

However, *McMillian* was decided on the basis of various provisions of *Alabama* law, such as a constitutional provision stating that "[t]he executive department shall consist of a governor, lieutenant governor, attorney-general, state auditor, secretary of state, state treasurer, superintendent of education, commissioner of agriculture and industries, *and a sheriff for each county*."  *Id.* at 1738 (emphasis added).  The County points to no similar constitutional or statutory provisions, instead simply reciting that "under Florida's statutory framework, the Sheriff is a Constitutionally independent officer who acts independent of the County." (Doc. 24 at 4).  This is not sufficient.

Moreover, a statutory provision cited by the County at the hearing in this matter – Florida Statute § 951.061 – suggests that Eslinger represents the County in regard to jail operations.  The statute provides that a county commission may adopt an ordinance designating the sheriff to be the chief correctional officer of the county correctional system,[12] after which the sheriff would operate and maintain the county's jails.  Fla. Stat. § 951.061(1).  The statute strongly suggests that, at least in regard to jail operations, a Florida sheriff acts as a county decisionmaker, and his decisions therefore establish the County's policy for purposes of Section 1983.  Even in the absence of this

---

[12]Seminole County contends that it has not adopted such an ordinance, a matter that, even if relevant, is not appropriate for disposition at this stage of the proceedings.  It is undisputed that Sheriff Eslinger is and was operating the Jail during the period at issue in the Complaint.

statute, however, the County has not shown that, as a matter of law, it cannot be held liable for the actions of the Individual Defendants in operating the Jail.

**IV.     Conclusion**

In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Dismiss by Defendants Eslinger, Tidwell, and Diggs (Doc. 21) is **GRANTED IN PART and DENIED IN PART**.  The Fourteenth Amendment claims in Count One, the entirety of Count Two, and the Fourth Amendment claims in Count Three of the First Amended Class Action Complaint (Doc. 20) are **DISMISSED**.  And it is further

**ORDERED** that the Motion to Dismiss (Doc. 23) filed by Seminole County is **DENIED.**

**DONE** and **ORDERED** in Chambers, Orlando, Florida on December 2, 2005.

Copies furnished to:

Counsel of Record
Unrepresented Party

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE